IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENWICK A. GLENN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-23-03204 |
| | * | |
| UNION, ILA LOCAL UNION 333, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants Marine Terminals Corporation – East ("MTCE") and Steamship Trade Association of Baltimore, Inc. ("STA"), move this Court for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). ECF No. 57; ECF No. 58. Plaintiff has responded in opposition, ECF No. 60, and Defendants have further filed replies. ECF Nos. 61 and 62. After considering the motion and the responses thereto, the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendants' Motions are GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an African American male, aged 62, who resides in Baltimore, Maryland. ECF No. 22 at ¶¶ 21, 63, 97. Plaintiff claims he is employed by Ports America Chesapeake,

---

[1] On November 27, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 15.

1

LLC ("Ports America Chesapeake") and the Steamship Trade Association of Baltimore, Inc. ("Steamship Trade Association"). *Id.* at ¶ 25.

Ports of America Chesapeake is "a large terminal operator and stevedore operating throughout the United States, which includes loading and unloading cargo from ships and other operational activities." ECF No. 22 at ¶ 27. Plaintiff asserts that "Ports of America Chesapeake, LLC" is a d/b/a for named Defendant "Marine Terminal Corporation – East." *See* ECF No. 22. The Steamship Trade Association is "a multi-employer association representing employers in the Port of Baltimore," which "provides labor management relations, payroll processing, and work hours database management for those employed in the maritime trade industry." *Id.* at ¶¶ 23, 28. Plaintiff is also a member of Local 333, a union, which operates as an affiliate of the International Longshoreman's Association (ILA). *Id.* at ¶ 22. The ILA is a labor union that represents longshoreman, clerks, checkers, and maintenance employees working on ships and terminals in ports on the East and Gulf coasts of the United States. *Id.* at ¶ 29. The relationship between the Steamship Trade Association and Local 333 is governed by a collective bargaining agreement. *Id.* ¶ 23.

Plaintiff asserts that while employed by Defendants, he completed and passed a simulated crane training program on or about February 2, 2007; on or about August 20, 2010; and on or about January 20, 2012. *Id.* at ¶¶ 66–68. He believes that he was required by Defendants to retake the program a second and third time "to prevent [him] from getting practical crane training on the pier and ship." *Id.* at ¶ 66. Plaintiff claims he was ultimately never given the opportunity to become a "Certified Crane Operator" despite having completed and passed the required test. *Id.* at ¶ 69. However, he contends that three White

males, and one African American male, all younger than himself, "completed an application for Crane Operator Trainee and received a promotion to Crane Operator Trainee over Plaintiff despite having less seniority." *Id.* at ¶ 70.

While the Amended Complaint provides few details, Plaintiff also asserts that on September 14, 2018, internal union charges were brought against him after he filed a charge of discrimination with the EEOC. *Id.* at ¶¶ 72–73. That same day, Plaintiff was suspended from membership in the ILA for a period of one year. *Id.* at ¶ 74. Plaintiff contends that when he inquired as to why he was not promoted, his supervisor stated that it was because Plaintiff had filed complaints with the EEOC. *Id.* at ¶ 75. In addition to these alleged acts of adverse treatment and retaliation, Plaintiff further claims that Defendants suspended him "in an act of retaliation" on several different instances spanning fifteen years. ECF No. 60 at 5.

**Procedural Background**

On November 24, 2023, Plaintiff filed suit in this Court. ECF No. 1. Plaintiff filed an Amended Complaint on January 16, 2024, alleging that all Defendants discriminated against him on the basis of race, in violation of Title VII (Count I) and on the basis of age, in violation of the Age Discrimination in Employment Act (ADEA) (Count II). ECF No. 22. Plaintiff further alleged that all Defendants retaliated against him in violation of Title VII (Count III) and discriminated against him in violation of § 1981 (Count IV). *Id.* In the Amended Complaint, Plaintiff also removed "Ports of America Chesapeake," as a defendant and added "Marine Terminal Corporation – East (d/b/a Ports America

Chesapeake, LLC)." *Id.* Plaintiff also changed the name of "Steamship Trade Association" to "Steamship Trade Association of Baltimore, Inc." ECF No. 22.

On January 22, 2024, Defendant Local 333 filed a Motion to Dismiss for Insufficiency of Service and Failure to State a Claim, or in the alternative, a Motion for Summary Judgment. ECF No. 29. Also on January 22, 2024, Defendants Steamship Trade Association and Marine Terminal Corporation filed a Motion to Dismiss for Failure to State a Claim.[2] ECF No. 30. On February 2, 2024, Plaintiff filed a Response in Opposition to Steamship Trade Association and Marine Terminal Corporation's Motion, and those Defendants replied on February 14, 2024. ECF Nos. 36, 37. Plaintiff did not respond to Defendant Local 333's Motion. *See* ECF No. 29.

This Court issued a Memorandum Opinion on February 26, 2024, to address these Motions. ECF No. 38. Specifically, this Court granted Defendant Local 333's Motion to Dismiss. Furthermore, this Court granted Defendants Steamship Trade Association and Marine Terminal Corporation – East's Motion to Dismiss as to Counts I, II, and IV, but denied the Motion as to Count III. *Id.* at 17. On September 20, 2024, Defendants Steamship

---

[2] The Motion was also filed on behalf of Ports America Chesapeake, LLC, because the Defendants were "uncertain from Plaintiff's Amended Complaint if Marine Terminal Corporation East has replaced Ports America Chesapeake, LLC, as a Defendant." Defendants further contend that the correct d/b/a for Marine Terminal Corporation East is "Ports America," and not "Ports America Chesapeake, LLC." ECF No. 30 at n.1.

It is clear to the Court that, in its Amended Complaint, Plaintiff did remove Ports of America Chesapeake as a defendant and add Marine Terminal Corporation – East as an additional defendant, regardless of whether Plaintiff correctly listed the d/b/a of Marine Terminal Corporation. *See* ECF No. 22. Therefore, Ports of America Chesapeake is not a separate party to this suit, and the Court only addressed Defendants' arguments as they related to the Steamship Trade Association and the Marine Terminal Corporation.

4

Trade Association and Marine Terminal Corporation filed separate Motions for Summary Judgment with this Court. ECF Nos. 57; 58.

## DISCUSSION

**Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See English v. Clarke*, 90 F.4th, 636, 645 (4th Cir. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (emphasis in original). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted); *see also McMichael v. James Island Charter School*, 840 Fed.Appx. 723, 726 (4th Cir. 2020).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-

movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**Analysis**

**Retaliation in Violation of Title VII (Count III)**

A Title VII retaliation claim can be proven "through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Inds. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Under the *McDonnell Douglas* framework, a Plaintiff must first establish a prima facie case of retaliation by proving "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). After this showing is made, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122. If the employer makes this showing, the burden shifts back to the plaintiff to "rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

I. <u>Defendant Marine Terminal Corporation East's Motion for Summary Judgment</u>

In its Motion for Summary Judgment, Defendant Marine Terminal Corporation – East argues that there is no genuine dispute as to any material fact concerning Plaintiff's retaliation claims and that it is therefore entitled to judgment as a matter of law. ECF No. 57 at 1. Specifically, Defendant MTCE references Plaintiff's deposition, where Plaintiff claims he worked for MTCE on a single occasion in the past several years, ECF No. 57-3, and Plaintiff's answers to interrogatories, where he claims he is not an employee of MTCE. ECF No. 59 at 6. MTCE further stresses that Plaintiff never filed a charge with the EEOC against MTCE. ECF No. 57-1 at 4. Lastly, MTCE argues that it does not do business as Ports of America Chesapeake and that they are separate companies. *Id.* at 5-6.

Applying the relevant legal framework to the facts at hand, it's clear that MTCE is entitled to judgment as a matter of law as to Plaintiff's retaliation claims. MTCE correctly points out that Plaintiff never filed an EEOC complaint against MTCE directly. ECF No. 57-1 at 4. While Plaintiff claims that MTCE does business as Ports of America Chesapeake, and that he filed EEOC complaints against this entity, MTCE disputes this characterization, and puts forward evidence that the two organizations represent separate business entities. *Id.* at 5. MTCE has provided additional evidence to show that it did not serve as Plaintiff's employer during the events in question, including Plaintiff's own testimony. *Id.* at 1-3. Plaintiff has failed to produce sufficient evidence to show MTCE exercised the level of control over Plaintiff's work to qualify as an employer under the law. *See, e.g.*, *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 413 (4th Cir. 2015). On this basis, the Motion is GRANTED.

Assuming Plaintiff could show that MTCE served as his employer, and that he exhausted his administrative remedies as it relates to MTCE, his retaliation claims against MTCE would still fail. As an initial matter, Plaintiff offers no direct evidence of retaliation on the part of MTCE. Turning to the *McDonnell Douglas* framework, Plaintiff cannot show that MTCE took a retaliatory action against him, admits as much in his own responses to Defendant's interrogatories, ECF No. 59 at 4, and thus fails element two of the relevant analysis here. ECF No. 59 at 4. As Defendant stresses in its memorandum, Plaintiff explicitly stated in his deposition that he suffered no retaliatory conduct at the hands of MTCE. *Id.* In his Response, Plaintiff focuses squarely on Defendant STA's Motion, and does not address the evidence presented by MTCE directly. ECF No. 60.

In sum, even if Plaintiff could show that MTCE was his employer during the time in question and that Plaintiff timely filed an EEOC complaint against MTCE, which he has not, a reasonable jury could not conclude that MTCE unlawfully retaliated against Plaintiff, and no genuine dispute as to a material fact exists as it relates to this Count against MTCE. Accordingly, Defendant MTCE's Motion for Summary Judgment is GRANTED.

II. <u>Defendant Steamship Trade Association of Baltimore, Inc.'s Motion for Summary Judgment</u>

Defendant STA similarly requests this Court grant summary judgment in its favor as to Plaintiff's Count III. ECF No. 58. Specifically, STA claims that it never employed Plaintiff, that Plaintiff failed to exhaust his administrative remedies against STA, and that, even if this Court disregards STA's other arguments, it did not retaliate against Plaintiff,

as its denial of Plaintiff's training request was the result of a widely implemented policy. ECF No. 58-1.

### A. STA's Alleged Status as an Employer

As a preliminary matter, STA argues that it does not qualify as a joint employer of Plaintiff. ECF No. 58-1. Specifically, STA acknowledges that it tracks union-represented worker hours and wages "so that various Taft-Hartley Funds providing fringe benefits to labor . . . can determine an individual's qualifications." ECF No. 62 at 2. However, STA argues that fund trustees make these decisions as to benefits, not STA itself. *Id.* STA also acknowledges that it has computer records of Local 333 members' skills "so that Local 333 dispatchers' computers can match job opportunities to labor." *Id.* at 3. STA further admits that it publishes "the port employers' work orders on its website and to Local 333." *Id.* Still, STA argues that these tasks represent "ministerial functions" as opposed to control over the means, methods, or functions of the Plaintiff's work. *Id.*

Plaintiff disputes this notion, relying on much of the same evidence. ECF No. 60 at 7-8. In Plaintiff's view, STA's maintenance of employment records, provision of training, together with its ability to discipline workers like Plaintiff, all amount to control over the Plaintiff's work in a way that aligns with that of an employer. *Id.* at 8. Given the facts presented, taken together with the Fourth Circuit's holding in *Butler*, STA appears to exercise some ministerial control over Plaintiff's work which could arguably be seen as that of an employer. It is a close call. Assuming Plaintiff presented sufficient facts as to STA's status as a joint-employer, which this Court has great reservations about, Plaintiff's retaliation claims against STA ultimately fail due to the deficiencies discussed below.

9

B. Exhaustion

Turning to the issue of exhaustion, STA argues that Plaintiff's claims concerning suspensions as retaliations are time-barred. ECF No. 58-1 at 5. Specifically, STA claims that each of Plaintiff's EEOC complaints as to retaliatory suspensions fall outside of the 300-day window that an individual must submit their complaint. *Id.* This is not a close call, and the Court here agrees with STA.

An individual alleging discrimination in violation of Title VII must file an administrative charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1). If a charge filed with the Commission is dismissed by the Commission…the person aggrieved is given ninety days after the giving of such notice a civil action may be brought. See 42 U.S.C. § 2000e-5(f)(1). In other words, before a Plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. *Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 131 (4th Cir. 2002); *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. *Id.*

In calculating within what time period an EEOC charge must be filed, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that a failure to promote and other retaliatory adverse employment decisions are "discrete acts which constitute "separate actionable 'unlawful employment

10

practices'"). Further, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' *Id.* at 110.

As STA explains in their memorandum, any of Plaintiff's charges related to suspensions as retaliation, arising from incidents in 2006, 2010, 2018, and 2021, were brought well past the 300-day mandatory filing period. ECF No. 58-1 at 16-17. Therefore, by filing his charges after 300 days, Plaintiff failed to exhaust his administrative remedies. Accordingly, Plaintiff's retaliation claims as to his suspensions fail.

C. Retaliation and Training

Here, Plaintiff cannot show direct evidence of discrimination on the part of STA at this stage. *See also Ortiz v. Baltimore Police Dep't*, 2024 WL 4287999, at *4 (D.Md Sept. 25, 2024) ("Hearsay cannot be considered in the summary judgment context."). Accordingly, Plaintiff argues that he has established a prima facie case of discrimination via the *McDonnell Douglas* burden-shifting framework. ECF No. 60-1 at 8. Specifically, Plaintiff argues that he was "continuously and consistently denied crane training, despite passing multiple simulated tests on February 2, 2007, August 20, 2010, and January 2012, as well as one test identified by STA as the actual crane test on June 6, 2017." *Id.* at 11. Plaintiff contends that these and other actions on the part of STA "demonstrate a clear pattern of retaliation." *Id.*

In their Motion, where it concerns Plaintiff's claims as to training, STA argues that Plaintiff's arguments fail to satisfy the second element of the *McDonnell Douglas* test. ECF No. 58-1 at 16. As to the second element at issue, STA claims that Plaintiff cannot show that it acted adversely to him, as it "is uncontested that the STA does not select crane

11

training candidates." *Id.* at 18. Instead, STA claims that, per the Local 333 Agreement Memorandum of Settlement dated March 25, 2015, the "employers and the Local 333 Union make that decision." *Id.* at 18.

STA claims that, consistent with this agreement, the parties prioritized "applicants who never received crane training over applicants who declined, failed, or quit crane, RTG, and Toploader training." *Id.* In sum, Defendant claims that "STA did not make this decision and did not retaliate against Plaintiff." *Id.* at 19. Furthermore, STA argues that it trained the Plaintiff "in the Toploader and RTG at approximately the same time his application for STS training was pending[,]" and that "there was no issue concerning STA training Plaintiff in these cranes, notwithstanding his filing of EEOC Charges against the STA." *Id.* And, as to the third element of the *McDonnell Douglas* test, STA claims that Plaintiff cannot show any causal connection between any retaliation and his protected activity. Specifically, STA cites to Defendant's deposition where he "enthusiastically concedes that many other individuals who filed EEOC Charges against STA received crane training and can bid on crane operator positions." *Id.* at 20.

Lastly, Defendant STA argues that even "if Plaintiff could show the STA was responsible for purportedly retaliating against him, the bargaining parties' action resulted from a legitimate non-retaliatory reason." *Id.* Specifically, STA claims that the bargaining parties "confronted with an increasing number of applicants who failed, declined, or quit training … decided to advance individuals who had yet to have the opportunity for training in the Toploader, RTG, or STS cranes." *Id.* STA claims that this decision, which has since been modified, affected all applicants. *Id.* In closing, STA stresses that it has produced a

legitimate, non-retaliatory reason for the termination at issue here, that Plaintiff now bears the burden of offering evidence that this proffered reason was pretextual, and that Plaintiff cannot meet this burden. *Id.* at 21.

Here, it's apparent that Plaintiff's claims as to STA's refusal to train are insufficient to survive STA's motion for summary judgment. As it relates to the second element of the *McDonnell Douglas* test, STA makes strong arguments as to how it serves as an administrator of training for certain employers, but that STA itself is not the ultimate decision-maker in this regard, and therefore incapable of taking adverse action. ECF No. 58-1 at 18. However, even if Plaintiff were to satisfy the second element here, the causal connection that Plaintiff attempts to draw between his EEOC complaints and STA's refusal to provide him with training is inadequate. Specifically, although Plaintiff filed EEOC complaints against STA, STA still provided him with Toploader and RTG training at the same time it denied him STS crane training. *Id.* at 20. And, both STA and Plaintiff agree that STA provided the training in question to other individuals who filed EEOC complaints against STA. *Id.* at 19; ECF No. 58-2 at 93. Thus, Plaintiff's claims as to the denial of training here falter at the third element of the *McDonnell Douglas* test.

Lastly, even if Plaintiff were able to prove a prima facie case of retaliation, STA has further demonstrated that it had a valid, non-retaliatory rationale for denying Plaintiff training. ECF No. 58-1 at 20. STA has established that its denial of STS training resulted from a policy decision that affected all applicants, and one that was driven by its own needs to curtail training provided to those who had previously withdrawn from such programs. While Plaintiff disputes this argument, STA has provided records to substantiate its claims,

13

ECF No. 62-1 and ECF No. 62-2, and Plaintiff is not otherwise able to show that this proffered reason from STA is pretextual. Accordingly, this Court will GRANT STA's Motion for Summary Judgment and dismiss Plaintiff's complaint.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendants' Motions (ECF No. 57; ECF No. 58) are GRANTED and Plaintiff's Amended Complaint is DISMISSED.

Date: 11/25/24

/s/
A. David Copperthite
United States Magistrate Judge